**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEVEN EDWARD WAY, SR., ) <br> ) <br> Plaintiff, ) <br> ) Case No. 16-CV-679-JHP-TLW <br> v. ) <br> ) <br> TULSA EAST CHILD SUPPORT ) <br> SERVICES, et al., ) <br> ) <br> Defendants. ) | |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment of Defendants Karen S. Smith and Catina R. Drywater (Dkt.# 133). Plaintiff, Steven Edward Way, Sr., brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Defendants contend they are entitled to summary judgment. After consideration of the pleadings, affidavits, and briefs, the Court finds Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

**A. Procedural History.**

On September 19, 2014, Plaintiff commenced this action by filing a "Motion for Injunction Relief and or Claim of Denial of Due Process and, or Fraud" (Dkt.# 1) in the District Court for the Southern District of California. On that same date, the District Court *sua sponte* dismissed this action without prejudice to refiling. Plaintiff then filed an "Amended Motion for Injunction Relief and or Claim of Denial of Due Process and or Fraud" (Dkt.# 5) which the District Court again *sua sponte* dismissed for failure to state a claim ( Dkt.# 12). On June 4, 2015, Plaintiff filed his Second Amended Complaint (Dkt.# 19). Named as Defendants were the Oklahoma Department of Human Services ("OKDHS"), Tulsa East Child Support Services, San Diego Child Support Services, and

two OKDHS child support enforcement attorneys, Karen S. Smith ("Smith") and Catina R. Drywater ("Drywater"). Plaintiff complains primarily that Defendants have tried to collect child support payments that he does not owe, have "stonewalled" his efforts to challenge or correct defendants' error, and have wrongly informed other entities that he owes child support payments. He alleges that Defendants' actions have, among other harms, precluded him from obtaining a passport. As relief, Plaintiff seeks "27,600,000,000.00" in damages.

On August 21, 2015, the District Court entered an "Order Conducting *Sua Sponte* Review and Denying Plaintiff's Motions for a Hearing and for a Temporary Restraining Order" (Dkt.# 25) which dismissed all of the claims against all of the Defendants except for his procedural due process claim asserted against Tulsa East Child Support Services, Smith, and Drywater set out in "Count Four" of "Claim Two" of his Second Amended Complaint. "Count Four" of "Claim Two" of the Second Amended Complaint reads in its entirety:

> "COUNT No. 4 Denial of Due Process
>
> The Plaintiff, Steven Edward Way, Sr., has on many occasions over the last 12 years (all dates not specified, but clearly referred to in writing by the Defendant(s)) until this very day, has continually demanded hearings to resolve this matter with Tulsa East Child Support Services, Karen S. Smith, Catina R. Drywater and other case workers (to be named specifically after discovery is complete). In almost each instance to be denied and or totally ignored by the Defendant(s) and being a denial of the Plaintiff's right to due process of law."

Dkt.# 19 at pp. 19-20.

After concluding that this claim survived initial review, the District Court directed Plaintiff to serve the remaining Defendants. Upon being served, the remaining Defendants moved for dismissal. The District Court denied the dismissal request of Smith and Drywater and converted Tulsa East Child Support Services' motion to one for summary judgment and allowed for supplemental briefing. Following supplemental briefing, the District Court granted summary judgment in favor of Tulsa East Child Support Services on the basis that it was entitled to Eleventh

Amendment immunity as it is an arm of OKDHS, which is an arm of the State of Oklahoma (Dkt.# 73). On October 19, 2016, Smith and Drywater filed a motion to transfer this case from the Southern District of California to this Court. On October 28, 2016, the District Court granted that motion and transferred the case to this Court (Dkt.#s 129-131). Following transfer to this Court, Defendants Smith and Drywater filed their Motion for Summary Judgment. Plaintiff has responded in opposition and Defendants submitted a reply brief.

**B. Factual Background.[1]**

Smith and Drywater are attorneys employed at the Tulsa East Child Support Services Office. Plaintiff is a child support obligor. His child support case was assigned to the Tulsa East Child Support Offices in 2000. The evidence shows that Plaintiff has had multiple hearings over a number of years regarding his child support obligations. Plaintiff has failed to pay court ordered child support payments and as a result is substantially in arrears in an amount over $67,000.00. Smith and Drywater came into contact with Plaintiff during the course of their employment due to their attempted enforcement of Plaintiff's child support obligations.

Despite the fact that Plaintiff is unable or unwilling to pay his child support obligations, he desires to travel internationally. However, due to his substantial child support arrearages, the U.S. Secretary of State has refused to issue him a passport (Dkt.# 19 at p. 11; 42 U.S.C. § 652(k)(2)). Despite Plaintiff's claim that he has been denied hearings to allow him to dispute the amount owed, the evidence shows otherwise. For example, in 2009, Drywater advised Plaintiff by letter of the actions that he would need to take in order to dispute the balance. There is no evidence that Plaintiff took those actions.

---

[1] These facts are either not specifically controverted by Plaintiff in accordance with Local Rule 56.1©, not subject to genuine dispute, or are described in the light most favorable to Plaintiff. Immaterial facts are omitted.

Smith then informed Plaintiff that a hearing was set on November 21, 2011, in which, amongst other issues, the issue of the amount of child support arrearages due and owing would be determined. Plaintiff appeared at the hearing telephonically. As a result of that hearing, an Administrative Enforcement Order was entered determining child support arrearage owed by Plaintiff in the principal amount of $32,940.92, along with $20,580.69 in interest, for the time period of November 2002 through October 2011, for a total of $53,521.61. The Administrative Enforcement Order notified Plaintiff of his right to appeal but Plaintiff failed to do so. The Administrative Enforcement Order was docketed in the District Court of Tulsa County and constituted a valid, enforceable order.

On December 12, 2011, an OKDHS attorney assigned to Plaintiff's case informed him that his passport could not be reinstated due to his failure to comply with child support orders. On December, 29, 2011, the Tulsa East Child Support Office transferred Plaintiff's child support case to California for prosecution under the Uniform Interstate Family Support Act. Plaintiff has not paid any child support since he was afforded his hearing on November 30, 2011. There is no evidence that Smith or Drywater have in any way prevented Plaintiff from properly challenging his child support obligations or that they denied him of any hearing.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir.1977). A fact is material if it is essential to the proper

disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no genuine issue for trial, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This burden may be met by showing that there is an absence of evidence to support the nonmovant's case. Id. at 325. If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed.R.Civ.P. 56(e). The nonmovant "must bring to the district court's attention some affirmative indication that [its] version of the relevant facts is not fanciful." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir.1988). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56©, except the mere pleadings themselves." Celotex, 477 U.S. at 324. In responding "to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway, 853 F.2d at 794 (citing Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir.1988)).

Summary judgment is not a "disfavored procedural shortcut," but instead is an important procedure "designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). The analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 250.

**A. Procedural Due Process.**

As noted above, Plaintiff's sole remaining claim for adjudication against Drywater and Smith is for alleged violations of his Fourteenth Amendment procedural due process rights. This claim is brought pursuant to 42 U.S.C. § 1983. To prevail on a claim brought pursuant to § 1983, a plaintiff must establish that the conduct of the defendant deprived him of a federal constitutional or statutory right and that the conduct complained of was committed under color of state law. American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). There is no dispute that the actions of Defendants Smith and Drywater were committed under color of state law. Therefore, the issue remains whether these Defendants deprived Plaintiff of his procedural due process rights.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. The Due Process Clause encompasses two distinct forms of protection: (I) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which is not at issue in this case. "To determine whether a plaintiff was denied procedural due process, [a court] engage[s] in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998); see also Couture v. Board of Educ. of Albuquerque Public Schools, 535 F.3d 1243, 1256 (10th Cir. 2008). In this case, Plaintiff had a protected liberty interest in his right to international travel. See Eunique v. Powell, 302 F.3d 971, 973 (9th Cir. 2002) ("It is undoubtedly true that there is a constitutional right to international travel."); Weinstein v. Albright, 261 F.3d 127, 134 (2d Cir. 2011) ("[P]laintiff's

6

right to international travel, which is undoubtedly restricted by the denial of his passport application and revocation of his previously issued passport, is a protected liberty interest . . ."). Given this determination, this Court must determine whether Plaintiff was afforded an appropriate level of due process.

The fundamental requirements of constitutional due process are notice and an opportunity to be heard. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14 (1950). Due process is a flexible concept that "calls for such procedural protections as the particular situation demands[.]" Guttman v. Khalsa, 669 F.3d 1101, 1114 (10th Cir. 2012). Refusing to issue a passport to an individual who owes child support arrearages is based on a certification process that requires the states to provide notice and an opportunity to contest the determination. In this case, it is clear that Plaintiff received both notice and an opportunity to be heard regarding his child support obligations. It is further clear from the evidence that Plaintiff understood that his passport could not be issued due to his child support arrearages. Thus, Plaintiff's procedural due process rights were not violated.

Even if Plaintiff had shown a violation of his procedural due process rights, there is no evidence that either Smith or Drywater personally participated in such a deprivation. Personal participation in the deprivation of a constitutional right is a prerequisite to liability. To establish the requisite personal participation, there must be an "affirmative link between the constitutional deprivation and the officer's exercise of control or direction." Mink v. Knox, 613 F.3d 995, 1001 (10th Cir. 2010). As pointed out by Smith and Drywater in their Motion for Summary Judgment, there is no evidence that either of these Defendants caused Plaintiff's passport to be revoked or denied pursuant to 42 U.S.C. § 652(k). Under § 652(k)(1), a state agency certifies to the Department of Health and Human Services ("DHHS") that an individual owes more than

7

$2,500 in past due child support. The Secretary of DHHS then transmits the certification to the Secretary of State. Id. Upon receiving the certification, "[t]he Secretary of State shall ... refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual." 42 U.S.C. § 652(k)(2).

Plaintiff has the burden to establish that a constitutional violation occurred and he has not met his burden.  Plaintiff further has the burden to establish that these Defendants personally participated in a constitutional deprivation of his rights and he has failed to meet that burden. See Abeyta ex rel. Martinez v. Chama Valley Independent Sch. Dist., No. 19, 77 F.3d 1253 (10th Cir. 1996) (the plaintiff in a § 1983 action has the burden to come forward with evidence establishing that his constitutional rights were violated and to show that a specific state actor committed the violation). Accordingly, both Defendants are entitled to summary judgment on Plaintiff's procedural due process claim.

**B. Statute of Limitations.**

Although this Court has determined that no constitutional violation occurred and no further analysis is necessary to dispose of this case, the Court notes that Plaintiff's claim is also barred by the statute of limitations.  The evidence shows that Plaintiff was aware of his passport denial/revocation in December 2011 at the latest.  This lawsuit was first filed nearly three years later on September 19, 2014.  To prevent his claim from being time barred, Plaintiff would have needed to file this lawsuit within two years of his discovery of the passport revocation/denial.  See Wilson v. Garcia, 417 U.S. 261 (1985); Young v. Davis, 554 F.3d 1254, 1256 (10th Cir. 2009) (limitation period for an action under 42 U.S.C. § 1983 is set by the personal injury statute in the state where the action accrues);12 O.S. §95(A)(3)(the limitations period for a personal injury action in Oklahoma at two years); Cal. Code Civ. P. § 335.1 (two year limitations period for

8

personal injury actions in California). Accordingly had this Court determined that a constitutional violation occurred, this Court would nevertheless grant summary judgment to Defendants as the claim is barred by the statute of limitations.

**C. Qualified Immunity.**

Defendants have asserted that they are entitled to qualified immunity. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). It provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205 (2001). When a defendant asserts qualified immunity, the plaintiff bears the heavy burden of demonstrating: (I) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time. Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). The court "has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" Id. (quoting Pearson, 555 U.S. at 129). In this case, because Defendants did not violate Plaintiff's constitutional rights, this Court need not address whether those rights were

clearly established. Accordingly, Defendants are entitled to qualified immunity and summary judgment is granted in their favor.

      **IT IS SO ORDERED** this 17th day of March, 2017.

*[signature]*

James H. Payne
United States District Judge
Northern District of Oklahoma